**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **LILY MORTAZAVI** | * |
| | * |
| v. | * |
| | *   **Civil No. JKS 09-637** |
| | * |
| **MICHAEL J. ASTRUE** | * |
| **Commissioner of Social Security** | * |
| | * |

**MEMORANDUM OPINION**

Plaintiff Lily Mortazavi brought this action pursuant to 42 U.S.C. § 405(g), for review of a final decision of the Commissioner of Social Security (Commissioner) denying her disability insurance benefits (DIB) under Title II of the Social Security Act (Act), 42 U.S.C. §§ 401-433, and Supplemental Social Security Income (SSI) payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1382 *et seq.* The parties consented to referral to a United States Magistrate Judge for all proceedings and final disposition. Mortazavi's and Astrue's motions for summary judgment are ready for resolution and no hearing is deemed necessary. *See* Local Rule 105.6. For the reasons set forth below, Mortazavi's motion for summary judgment will be denied, and Astrue's motion for summary judgment will be granted.

**1. Background.**

Mortazavi protectively filed applications for DIB and SSI on April 18, 2006, alleging an onset of disability on March 17, 2006. (R. 13, 122, 98-109). Following denial of her claims initially and on reconsideration, (R. 59-71), an Administrative Law Judge (ALJ) held a hearing on July 9, 2008, at which Mortazavi was represented by an attorney. (R. 24-58). On September 3, 2008, the ALJ found that Mortazavi was not disabled within the meaning of the Act. (R.10-

23). The Appeals Council denied Mortazavi's request for a review, rendering the ALJ's determination as the final decision of the Commissioner of Social Security. (R. 1-3).

## 2. **ALJ's Decision.**

The ALJ evaluated Mortazavi's DIB and SSI claims using the five-step sequential process set forth in 20 C.F.R. § 404.1520 and 416.920. First, the ALJ determined that Mortazavi has not engaged in substantial gainful activity since the alleged onset date of March 17, 2006. (R. 16). At step two, the ALJ concluded that Mortazavi has the following severe impairments: bipolar disorder and personality disorder. (R. 16-18). At step three the ALJ determined that Mortazavi's impairments, including the substance use disorder, meet sections 12.04, 12.08 and 12.09 of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 18-19). However, the ALJ determined that absent substance abuse, Mortazavi would not have an impairment or combination of impairments that meets or medically equals any of the listed impairments in Appendix 1. (R. 19). In evaluating Mortazavi's residual functional capacity (RFC) at step four, the ALJ found that, absent substance abuse, Mortazavi has the ability to perform a full range of work at all exertional levels but with nonexertional limitations. (R. 19-21). The ALJ further determined that, absent substance abuse, Mortazavi would be unable to perform her past relevant work. (R. 21-22). At step five, the ALJ found that, absent substance abuse, considering Mortazavi's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. (R. 22). As a result, the ALJ determined that, absent substance abuse, Mortazavi was not disabled within the meaning of the Act, and that her substance abuse disorder is a contributing factor material to the determination of disability. (R. 23).

**3. Standard of Review.**

The role of this court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Pass v. Chater*, 65 F.3d 1200, 1202 (4th Cir. 1995). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co, v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance, of the evidence presented. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). It is such evidence that a reasonable mind might accept to support a conclusion, and must be sufficient to justify a refusal to direct a verdict if the case were before a jury. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). This court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence. *Id.*

**4. Discussion.**

Mortazavi raises two issues in her appeal. First, she claims that the ALJ did not give proper weight to the opinions of her treating and consultative doctors, and did not include all of her limitations in a question to the vocational expert (VE). Second, Mortazavi claims that the ALJ erroneously assessed whether her use of drugs and alcohol was material to the finding that she was disabled.

   A. The ALJ Properly Considered the Opinions of Mortazavi's Treating and Consultative Physicians and Posed a Proper Hypothetical Question to the VE.

While the Commissioner must generally give more weight to a treating physician's opinion, *see* 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2), where a treating physician's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996).

Indeed, it may be disregarded entirely, but only where there is persuasive contradictory evidence. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). As to State agency medical and psychological consultants, their opinions can be given weight only to the extent that they are supported by evidence in the record. Soc. Sec. Ruling 96-6p, 1996 WL 374180, at *2; 20 C.F.R. §§ 404.1527(f) and 416.927(f).

This record adequately supports the ALJ's decision to reject Dr. Doriska Brown's opinion that Mortazavi was disabled or unable to work. In a form medical assessment, Dr. Brown assessed Mortazavi as having a good ability to relate with coworkers and to understand, remember and carry out simple job instructions, and had a fair ability to follow work rules, deal with the public, use judgment, deal with work stresses, function independently, maintain attention and concentration, behave in an emotionally stable manner, and relate predictably in social situations. (R. 300-01). Dr. Brown also opined that Mortazavi had a poor ability to interact with supervisors, remember and carry out complex job instructions, and demonstrate reliability. *Id.* Dr. Brown further reported that Mortazavi had a Global Assessment of Functioning (GAF) of 50. (R. 303). When asked whether these limitations would still exist in the absence of drug and alcohol abuse, Dr. Brown indicated that they would. (R. 302).

The ALJ discounted Dr. Brown's assessment because it was not consistent with her treatment records as well as other parts of the same form opinion. Specifically, the ALJ noted that Dr. Brown's treatment records indicate that between January 2008 and May 2008, when Mortazavi was not using drugs, she was doing well, had passed her cosmetology exam, had been working as a helper at a hair salon, and had clear thought processes. (R. 21, 273-77). The ALJ also noted that on the form medical assessment, Dr. Brown reported that the claimant had a good ability to relate with coworkers and had a fair ability to deal with work stresses, relate

4

predictably in social situations, and behave in an emotionally stable manner. (R. 21, 300-01). The ALJ properly discounted Dr. Brown's 2007 form medical assessment because it was not consistent with the clinical evidence indicating a change in Mortazavi's behavior and impairments when she was not using drugs or alcohol.

Contrary to Mortazavi's argument, the ALJ's disability assessment gave proper weight to the reports of both non-examining and examining consultative experts (CE). Dr. Lynda Payne, a non-examining CE, reported on September 21, 2006, that Mortazavi was "moderately limited" in certain areas, including, but not limited to, her abilities to maintain attention and concentration, perform activities within a schedule, work in coordination with others, interact appropriately with the public, respond appropriately to supervisors, maintain socially acceptable behavior, and set realistic goals. (R. 208-09). However, as Astrue correctly indicates, a finding of "moderately limited" falls somewhere between "not significantly limited" and "markedly limited" and does not correlate directly to a finding of disability. Indeed, in the third part of the assessment, Dr. Payne elaborated as to Mortazavi's RFC and reported that she can meet various personal needs from a mental health standpoint, that she manages within a basic routine, that she appears to have the ability to interact and relate with others socially, and that she has the capacity to perform work-related tasks from a mental health perspective. (R. 210). Dr. Shakuntala Dhir, an examining CE, reported on August 16, 2006, that Mortazavi had poor concentration, had a GAF of 50, and could not manage her own benefits. (R. 202-04). However, Dr. Dhir also found that Mortazavi's thought processes were clear and goal-oriented, and that she can take care of her personal needs. *Id.* The assessments of Drs. Payne and Dhir preceded Mortazavi's substance-free improvement and are not inconsistent with the ALJ's determination the Mortazavi has the RFC to perform a full range of work at all exertional levels but with the non-exertional

limitations of moderate difficulties in social functioning and moderate difficulties in concentration, persistence or pace resulting in bring limited to performing simple, routine unskilled tasks involving no more than minimal contact with coworkers, supervisors or the public.

Mortazavi also argues that the ALJ failed to pose a hypothetical question to the VE that included all of her documented limitations. "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (citations omitted). The ALJ is afforded great latitude in posing hypothetical questions to a VE. *France v. Apfel*, 87 F. Supp. 2d 484, 490 (D. Md. 2000) (quotations and citation omitted).

Although Mortazavi contends that the ALJ failed to include "any of the limitations" from her treating and consultative physicians in the question posed to the VE, the hearing transcript reveals that the hypothetical question properly considered all of Mortazavi's work-related limitations. The question included the limitations of minor difficulties in social functioning, and minor difficulties in concentration, persistence or pace, which limited Mortazavi to performing simple, routine, unskilled tasks involving no more than minimum contact with co-workers, supervisors, or the public. (R. 54). As discussed *supra*, all of these limitations were documented and supported by substantial evidence in Mortazavi's medical records and reports from her treating physician and consultative examiners.

B. The ALJ Properly Determined that Mortazavi's Drug and Alcohol Use was Material to the ALJ's Finding that Mortazavi was Disabled.

If an ALJ finds that a claimant, who has medical evidence of drug addiction or alcoholism, is disabled, the ALJ must then determine whether the addiction or alcoholism is a

contributing factor material to the determination of disability. 20 C.F.R. §§ 404.1535(a) and 416.935(a). The key factor is whether the ALJ would still find the claimant disabled if the drug or alcohol use stopped. 20 C.F.R. §§ 404.1535(b)(1) and 416.935(b)(1). To make this determination, the ALJ will evaluate which of the claimant's current physical and mental limitations would remain if the claimant stopped using drugs or alcohol and then determine whether any or all of the remaining limitations would be disabling. 20 C.F.R. §§ 404.1535(b)(2) and 416.935(b)(2). If the ALJ determines that the remaining limitations would not be disabling, then the ALJ will find that the drug addiction or alcoholism is a contributing factor material to the determination of disability, 20 C.F.R. §§ 404.1535(b)(2)(i) and 416.935(b)(2)(i), and a determination of disability is prohibited. *See* Contract with America Advancement Act, Pub. L. 104-121, 110 Stat. 847 (1996) (relevant portions codified in scattered sections of 42 U.S.C.).[1] If the ALJ determines that the claimant's non-substance related limitations are disabling, then the claimant is disabled independent of the drug addiction or alcoholism. 20 C.F.R. §§ 404.1535(b)(2)(ii) and 416.935(b)(2)(ii).

The ALJ found that Mortazavi's impairments met sections 12.04, 12.08 and 12.09 when she was abusing substances, but determined that her abuse of drugs and alcohol were material to that finding. In arriving at this conclusion, the ALJ made specific reference to Mortazavi's medical records from January through May 2008, when she was not abusing drugs or alcohol. *See Salazar v. Barnhart*, 468 F.3d 615, 624 (10th Cir. 2006) (applying the Commissioner's internal guidance on evaluating drug and alcohol cases that instructed that some of the most useful evidence "is that relating to a period when the individual was not using drugs/alcohol"). The ALJ noted that in January 2008, when Mortazavi had reportedly not been using drugs for

---

[1] This Act prohibits Title II and Title XVI disability entitlement to individuals for whom alcoholism and/or drug abuse was a contributing factor material to the determination of disability. Pub. L. 104-121, 110 Stat. 847.

two months, Dr. Brown's records described that Mortazavi was happy and motivated, had been attending NA meetings, and had passed her cosmetology exam. (R. 21, 277). In March 2008, Mortazavi continued to do well and remained abstinent from drug use, (R. 275), and in April 2008, she was working as a helper at a hair salon. (R. 21, 274). In May 2008, Mortazavi continued to be abstinent of drug use and her mood and affect were full and her thought processes were clear. (R. 21, 273). The ALJ also noted that Mortazavi testified that her medications help with mood swings, and that she passed her cosmetology exam and had obtained her license. (R. 20, 42, 49).

Based on this evidence, the ALJ found that absent drug and alcohol abuse, Mortazavi would still have the severe impairments of bipolar disorder and personality disorder; however, the impairments would not be so severe as to meet or medically equal any of the impairments listed in Appendix 1, and would allow her to perform the full range of exertional work with nonexertional limitations. Because Mortazavi's remaining impairments would not be disabling, the ALJ found that her substance abuse was a contributing factor material to the determination of disability, and therefore she could not be disabled under the Act. (R. 20). Although Mortazavi argues that the ALJ merely stated that her substance abuse was material without explanation, the ALJ's decision, as discussed *supra*, reveals that the ALJ's determination followed the procedures outlined in 20 C.F.R. § 404.1535 and 416.935. *Cf. Brueggemann v. Barnhart*, 348 F.3d 689, 694 (8th Cir. 2003) (finding reversible error where ALJ failed to follow procedures outlined in 20 C.F.R. § 404.1535 because ALJ did not first determine whether claimant was disabled before concluding that alcohol and drugs cannot form a basis for disability). Accordingly, the ALJ properly determined that Mortazavi's abuse of drugs and alcohol was material to the finding that she was disabled.

## 5. **Conclusion.**

For the foregoing reasons, Mortazavi's motion for summary judgment will be denied, and Astrue's motion will be granted. A separate Order will be entered.

Date:  August 26, 2010                                      _____/S/_____
                                                                       JILLYN K. SCHULZE
                                                                 United States Magistrate Judge